IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ROBERT CLYDE SHANK,

       Plaintiff,

v.                                       Case No.: 3:20-cv-00444

ANDREW M. SAUL,
Commissioner of the
Social Security Administration,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross motions for judgment on the pleadings, as articulated in their briefs. (ECF Nos. 12, 14).

For the following reasons, the undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's motion for judgment on the pleadings to the extent that it requests remand of the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g);

**DENY** Defendant's request to affirm the decision of the Commissioner; **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this case, **with prejudice**, and remove it from the docket of the Court.

## I.    <u>Procedural History</u>

In July 2017, Plaintiff Robert Clyde Shank, Sr., ("Claimant") filed applications for DIB and SSI, alleging a disability onset date of February 8, 2012 due to "chest pain, tightening of the chest, limited walking, heart condition, fingers and toes swell in cold weather, nervous all the time, mild case of diabetes, lifting is limited, shortness of breath, high blood pressure, and high cholesterol." (Tr. at 391-404, 416). The Social Security Administration ("SSA") denied Claimant's applications initially and upon reconsideration. (Tr. at 78). Thus, Claimant requested an administrative hearing on his applications for benefits, which was held on July 25, 2019 before the Honorable Nathan Brown, Administrative Law Judge (the "ALJ"). (Tr. at 121-45). Claimant amended his alleged onset date to December 10, 2015 during the hearing. (Tr. at 125). By written decision dated August 14, 2019, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 75-97). The ALJ's decision became the final decision of the Commissioner on May 4, 2020 when the Appeals Council denied Claimant's request for review. (Tr. 1-7).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 10, 11). Claimant filed a Brief in Support of Motion for Judgment on the Pleadings, and the Commissioner filed a Brief in Support of Defendant's Decision to which Claimant filed a

reply. (ECF Nos. 12, 14, 15). Consequently, the matter is fully briefed and ready for resolution.

## II.  <u>Claimant's Background</u>

Claimant was 53 years old on his amended alleged onset date and 56 years old on the date of the ALJ's decision. He completed high school, communicates in English, and previously worked as a manager of Advance Auto Parts. (Tr. at 415, 417, 418).

## III.  <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c).

Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2017. (Tr. at 81, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since December 10, 2015, the amended alleged

disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: obesity, coronary artery disease with angina, hyperlipidemia, gastroesophageal reflux disease, and myocardial infarction. (*Id.*, Finding No. 3). The ALJ also considered Claimant's hypertension, carpal tunnel syndrome, constipation, hemorrhoids, polyps, chronic kidney disease, kidney stone, acute otitis media of the right ear, upper respiratory infection, acute seasonal allergic rhinitis, and anxiety, but he found that the impairments were non-severe. (Tr. at 81-83). The ALJ further concluded that Claimant's diabetes was not a medically determinable impairment. (Tr. at 83). Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 83-85, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can lift and carry 20 pounds occasionally and 10 pounds frequently, sit for up to six hours in a day, and stand and walk up to six hours in a day. He can push and pull as much as he can lift and carry. The claimant can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, frequently balance and stoop, occasionally kneel and crouch, and never crawl. The claimant can work frequently in weather and occasionally in humidity, atmospheric conditions, extreme heat, and extreme cold. The claimant can occasionally work at unprotected heights, with heavy or hazardous machinery, and in vibration.

(Tr. at 85-90, Finding No. 5).

At the fourth step of the analysis, the ALJ determined that Claimant could perform his past relevant work as a manager of a retail store. (Tr. at 90-91, Finding No. 6). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act. (Tr. at 91, Finding No. 7).

**IV.**    **Claimant's Challenge to the Commissioner's Decision**

Claimant asserts two challenges to the Commissioner's decision. First, he contends that the ALJ erred in not assessing mental restrictions in his RFC although the ALJ found that Claimant had mild limitation in the functional area of adapting and managing himself. (ECF No. 12 at 5). Second, Claimant argues that the ALJ did not explain how he weighed the opinions of the consultative examiners, Lester Sargent, M.A., and Kip Beard, M.D. (*Id.* at 8).

In response to Claimant's challenges, the Commissioner asserts that the ALJ properly found that the minimal evidence of Claimant's mild anxiety did not warrant an RFC limitation. (ECF No. 14 at 10-13). Furthermore, the Commissioner argues that the consultative examination reports were not medical opinions under the revised regulations, and the ALJ was not required to assign them weight or evaluate their persuasiveness. (*Id.* at 16). The Commissioner asserts that the ALJ explicitly considered the consultative examination findings along with all of the medical evidence to formulate Claimant's RFC. (*Id.*).

Claimant's reply emphasizes that the ALJ's error was his lack of explanation. Specifically, Claimant argues that the ALJ did not articulate why he did not include any RFC limitations to account for Claimant's mild limitation in adapting and managing himself. (ECF No. 15 at 2). Claimant contends that the omission was "absolute legal error when the issue involves performing past relevant skilled work." (*Id.*). Claimant states that the question before the Court is not whether Claimant had mental limitations, but whether the ALJ accommodated the mental limitations that he found credible in the RFC assessment and hypothetical question to the expert. (*Id.*). Regarding the consultative reports, Claimant states that the Commissioner's response is inconsistent because the

Commissioner argues that the consultative findings were not opinions, but he also states that the ALJ considered the opinions. (*Id.*). Claimant maintains that the decision must be remanded because the ALJ did not evaluate the persuasiveness of the consultative findings. (*Id.* at 3).

## V.    <u>Relevant Evidence</u>

The undersigned has reviewed all of the evidence before the Court. The following evidence is most relevant to the issues in dispute.

### A. *Treatment Records*

Claimant suffered a heart attack and underwent percutaneous transluminal coronary angioplasty (PTCA) and stent placement in 2008. (Tr. at 584). Following the procedures, he did not have significant chest pain, and his cardiologist described his coronary artery disease as asymptomatic. (Tr. at 581, 584).

However, Claimant presented to cardiologist Jeffrey M. Friedel, M.D., on March 6, 2014, after not being seen for several years. (Tr. at 575). He was no longer taking any of his medications except for aspirin. (*Id.*). Claimant complained of exertional chest pressure that occasionally radiated to his left arm. (*Id.*). Dr. Friedel strongly recommended cardiac catheterization, but Claimant stated that he did not have insurance and could not afford treatment. (Tr. at 577-78).

Claimant continued to complain of exertional chest pain and eventually underwent cardiac catheterization on August 10, 2017. (Tr. at 503, 508, 514, 590, 658-59). The study showed normal hemodynamics and left ventricle function. (Tr. at 658-59). Claimant also occasionally told his providers that he suffered dyspnea upon exertion, but he denied shortness of breath during other appointments. (Tr. at 503, 508, 514, 590). He stated that his chest pain was relieved by taking nitroglycerin. (Tr. at 590).

Cardiologist Melissa Lester, D.O., examined Claimant on September 12, 2017. (Tr. at 683). Claimant reported a "couple of episodes of chest discomfort" for which he took nitroglycerin. (*Id.*). Claimant's examination findings were normal, including his cardiovascular, pulmonary, musculoskeletal, and psychiatric findings. (Tr. at 684-85). The following month, on October 31, 2017, Claimant presented to St. Mary's Medical Center Emergency Department, complaining of chest pain that radiated into his back and lower abdomen, nausea, and vomiting. (Tr. at 640). The provider determined that Claimant passed a kidney stone. (Tr. at 646). Claimant's chest x-ray did not reveal any abnormalities in his heart or lungs. (*Id.*). He denied any cardiac symptoms during his follow up appointment with Dr. Lester on November 21, 2017. (Tr. at 680).

On December 22, 2017, Claimant presented to primary care provider, Brent Thornhill, D.O., to establish care. (Tr. at 822). He was doing well and stated that his chest pain was improving, but his chest pain caused anxiety. (*Id.*). Claimant described that his chest pain typically improved with rest and resolved within 15 minutes if he took nitroglycerin. (*Id.*). Claimant also reported joint pain in his lower back, right knee, and neck for which Tylenol provided mild relief. (*Id.*). His gait, station, and cardiovascular and pulmonary examinations were normal. (Tr. at 825).

Claimant followed up with Dr. Lester on May 22, 2018, complaining of chest pain and pressure and exertional dyspnea. (Tr. at 1002). He reported taking nitroglycerin almost daily, which relieved the pain, but the pain was now occurring at rest. (*Id.*). Dr. Lester prescribed medication and ordered a stress test. (Tr. at 1005). The stress test performed on June 1, 2018, did not show any abnormalities. (Tr. at 1001). Claimant expressed the same complaints of chest pain. Pressure, and exertional dyspnea to Dr. Lester on July 24, 2018. (Tr. at 996). Thus, Dr. Lester adjusted Claimant's medication.

(Tr. at 999).

On August 3, 2018, Claimant told Dr. Thornhill that he was doing well with only one episode of chest pain since his last visit. (Tr. at 1058). The chest pain occurred when he was walking upstairs while carrying laundry, and it resolved after Claimant took nitroglycerin. (*Id.*). Claimant further complained of lower extremity numbness that was worse in the winter and when walking, and he reported some back pain. (*Id.*). His ankle-brachial index test taken on August 7, 2018, was normal. (Tr. at 992).

Dr. Thornhill noted on September 14, 2018, that Claimant was doing well, his chest pain was stable, and he cut back on walking, which helped his leg and knee pain. (Tr. at 1052). Claimant denied chest pain and dyspnea during subsequent appointments with Dr. Thornhill on September 25 and November 27, 2018. (Tr. at 1122, 1133). Thereafter, on January 4, 2019, Claimant reported that he suffered intermittent chest pain that was stable and not worsening. (Tr. at 1116). He described his breathing as "heavier than usual." (*Id.*). On examination, Claimant was mildly wheezing, but he had normal cardiovascular, musculoskeletal, and psychiatric examinations. (Tr. at 1118). Dr. Thornhill diagnosed Claimant with acute seasonal allergic rhinitis due to pollen. (Tr. at 1119). Claimant's echocardiogram taken on February 18, 2019, was normal. (Tr. at 1108).

On April 12, 2019, Claimant told Dr. Thornhill that he was doing well, and his angina was stable with only one noteworthy recent episode when he was carrying a 25-pound bag of birdseed. (Tr. at 1139). The chest pain resolved within minutes of rest. (*Id.*). Claimant reported that his low back pain, joint pain, and ankle pain were improving with current treatment and warmer weather. (*Id.*). Claimant's cardiovascular, pulmonary, musculoskeletal, and psychiatric examinations did not indicate any abnormalities. (Tr. at 1141-42).

### B. *Evaluations and Prior Administrative Findings*

On January 8, 2018, state agency psychologist, Lester Sargent, M.A., examined Claimant. Claimant stated that he was applying for benefits, because he was terminated from his job as manager of an auto parts store. Claimant indicated that he had worked at the store for approximately 30 years, but could no longer perform the job functions. (Tr. at 779-80). Claimant reported that he could not lift anything, had chest pain that extended into his left arm, and had bad knees. *Id.* He added that he experienced difficulty sleeping, and had sold his house and moved in with his parents, which relieved the stress. (*Id.*). Claimant described a history of sporadic anxiety symptoms characterized by unsatisfying sleep, worry, chest pain, and difficulty breathing, which appeared to be exacerbated by and related to his medical conditions. (*Id.*) Mr. Sargent noted that chronic pain was the focus of clinical attention during the evaluation, and he judged that psychological factors played a minimal role in the onset, severity, and exacerbation of Claimant's pain complaints. (*Id.*) Claimant did not have any history of mental health treatment. (*Id.*) He appeared for the examination mildly slumped with somewhat slow gait. (Tr. at 778). However, Claimant was adequately groomed with proper hygiene, was cooperative, and maintained good eye contact with Mr. Sargent. (Tr. at 780). All of Claimant's mental status examination findings were normal except for his mildly anxious mood and mildly deficient remote memory. (*Id.*). Mr. Sargent diagnosed Claimant with unspecified anxiety disorder. (*Id.*)

On January 25, 2018, state agency psychologist, John Todd, Ph.D., performed a psychiatric review technique based upon his analysis of Claimant's records. Dr. Todd concluded that Claimant had mild limitations in understanding, remembering, or applying information, but he had no limitations in interacting with others; concentrating,

persisting, or maintaining pace; or adapting or managing himself. (Tr. at 240). Karl G. Hursey affirmed Dr. Todd's findings on March 28, 2018. (Tr. at 271).

On January 31, 2018, state agency physician, Kip Beard, M.D., performed an internal medicine examination of Claimant. Claimant appeared stable at station without assistance, his gait was stable with normal pace and appearance, and he could arise from a chair and step up and down from the examination table without difficulty. (Tr. at 785). Claimant could also walk on his heels and toes, tandem walk, stand on one leg, and fully squat. (*Id.*). His pulmonary and cardiac examinations were normal, including normal heart rate and rhythm, clear lung auscultation, and no exertional dyspnea. (Tr. at 786). There was no swelling in Claimant's extremities; he could write and pick up coins, tie a string, and button bilaterally; his sensation was intact; he had full strength in his extremities; and his deep tendon reflexes were normal. (Tr. at 786-89). Dr. Beard noted that Claimant had unstable angina per history, but unremarkable clinical assessment. (Tr. at 789). He did not find any clinical evidence of decompensated heart failure, and he noted that Claimant did not appear to be in acute distress. (*Id.*). Dr. Beard further found that Claimant's respiratory examination and pulmonary spirometry test were normal. (*Id.*).

On February 13, 2018, state agency physician Isidro Amigo, M.D., assessed Claimant's physical RFC based upon a review of Claimant's records. R. Amigo concluded that Claimant could perform work at the light exertional level with occasional postural activities and no concentrated exposure to temperature extremes, humidity, vibration, fumes, and hazards. (Tr. at 243-44). Rabah Boukhemis, M.D., affirmed Dr. Amigo's findings on April 2, 2018. (Tr. at 273-75).

### C. Claimant's Statements

Claimant completed a function report on August 4, 2017, listing his daily activities

as preparing simple meals, performing personal hygiene, reading the newspaper, working on puzzles, watching television and movies, and eating. (Tr. at 435, 436). He also did laundry, some dusting, and mopped the bathroom floor. (Tr. at 436). Claimant wrote that he could not perform more strenuous physical activities because it caused chest pain, dyspnea, dizziness, and lack of balance. (Tr. at 437-38). He further stated that prolonged standing caused his legs and feet to swell. (Tr. at 437). Claimant articulated that he was restless at night due to stress, and he did not handle stress well. (Tr. at 435, 440).

Claimant testified during his administrative hearing on July 25, 2019 that he could not work due to chest pain that averaged 6 or 7 on a 10-point pain scale and occurred four or five times per week. (Tr. at 131). He stated that he had to lie down and often take a nitroglycerin pill when it occurred. (Tr. at 132, 133). Claimant testified that movement and lifting anything too heavy triggered chest pain, dizziness, and shortness of breath. (Tr. at 133-34, 135). He further claimed that his feet hurt, if he walked too far, and his fingers were swollen and numb in the winter. (Tr. at 135-36).

## VI.    Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642

(4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.  <u>Discussion</u>

Claimant challenges the ALJ's analysis of his mental limitations and the consultative examination evidence. Each argument is addressed below, in turn.

### *A.  Mental Limitations*

Claimant first argues that the ALJ erred in not assessing mental RFC restrictions despite finding that Claimant had mild limitations in the functional area of adapting and managing himself. SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id*. According to the Ruling, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3.

14

The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR §§ 404.1545(b)-(d), 416.945(b)-(d)

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7.

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or

where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

Claimant's challenge to the Commissioner's decision concerns his ability to adapt or manage himself, which is defined as the capacity to "regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E(4). Examples of adaptation and self-management include: responding to demands, adapting to changes, managing psychologically based symptoms, distinguishing between acceptable and unacceptable work performance, setting realistic goals, making plans for oneself independently of others, maintaining personal hygiene and attire appropriate to a work setting, and being aware of normal hazards and taking appropriate precautions. *Id.*

In this case, at step two of the sequential evaluation, the ALJ summarized Claimant's consultative psychological examination report, noted that Claimant had no treatment of record for anxiety, and determined that the prior administrative findings that Claimant did not have any severe mental impairments were persuasive. (Tr. at 82). However, the ALJ was unpersuaded by the state agency psychologists' specific conclusions that Claimant had mild limitations in understanding, remembering, or applying information and no limitations in adapting or managing himself. (*Id.*). The ALJ found that the evidence did not support that Claimant had any limitation understanding, remembering, or applying information, but it did indicate that Claimant was mildly limited in the functional area of adapting and managing himself. (*Id.*). The ALJ explained that Claimant alleged that he had difficulty handling change and sleeping, and he exhibited some anxious mood, but reported that moving in with his parents helped relieve

a lot of his stress. (Tr. at 83). On that basis, the ALJ concluded that Claimant had mild limitation in adapting or managing himself. (*Id*.).

The ALJ acknowledged at step two that his finding regarding Claimant's "paragraph B criteria" was not an RFC assessment, which required a more detailed assessment itemizing the various functions contained in the broad categories found in "paragraph B" of the adult mental disorder listing in 12.00 of the Listing. (*Id*.). The ALJ stated that the RFC assessment reflected the degree of limitation that the ALJ found in the "paragraph B" mental function analysis.

However, the only ensuing mention of Claimant's mental impairments in the RFC analysis are the ALJ's brief sentences which summarize Claimant's allegations. The ALJ cited Claimant's alleged difficulty sleeping and handling stress and changes in routine. (Tr. at 86). The ALJ did not otherwise evaluate Claimant's mental functional abilities or provide any insight into why he did not assess any mental RFC restrictions. Rather, the RFC assessment focuses almost exclusively on Claimant's physical impairments.

The ALJ's decision concerning Claimant's mental impairments is a prime example of inadequacy which frustrates meaningful review. The Court must speculate regarding the ALJ's mental RFC finding because the decision is devoid of any discussion of those functions. "Of course, it is in the purview of the ALJ to determine whether the combination of severe and nonsevere impairments requires additional limitations to Plaintiff's RFC, and the accompanying hypothetical. However, without such an explanation, this Court cannot review whether the ALJ's decision is supported by substantial evidence." *Clarence M. v. Saul*, No. CV SAG-19-2393, 2020 WL 3871142, at *4 (D. Md. July 9, 2020) (challenging the ALJ's failure to consider nonsevere mental impairments in the RFC analysis).

The Court appreciates that the record primarily concerns Claimant's physical impairments. Nevertheless, the evidence is not so one-sided that the Court can affirm the Commissioner's decision without improperly filling in the blanks for the ALJ. The ALJ found that Claimant had a mild degree of limitation in adapting and managing himself. Indeed, he concluded that the evidence demonstrated that Claimant was more limited in that functional area than the psychology experts assessed. That step two finding does not necessarily translate into work-related functional limitations, but the Court cannot determine whether the RFC finding is supported by substantial evidence without knowing the ALJ's reasoning. The boilerplate statement that the RFC assessment reflects the degree of limitation that the ALJ found in the "paragraph B" mental function analysis is an insufficient substitute for substantive analysis, and it does not provide the level of articulation necessary for meaningful review. For the above reasons, the undersigned concludes that the RFC assessment is inadequate under SSR 96-8p and Fourth Circuit law. *See, e.g., Clarence*, 2020 WL 3871142, at *4; *Janet L. v. Saul*, No. CV CBD-19-2544, 2021 WL 1733469, at *6-10 (D. Md. Apr. 30, 2021); *Anderson v. Saul*, No. 419CV00846MGLTER, 2020 WL 3579745, at *5 (D.S.C. June 25, 2020), *report and recommendation adopted,* 2020 WL 3548810 (D.S.C. June 30, 2020); *McMichael v. Colvin*, No. 1:15CV528, 2016 WL 4556768, at *4 (M.D.N.C. Aug. 31, 2016); *Cf. Gough v. Berryhill*, No. 1:17CV72, 2018 WL 791271, at *5 (M.D.N.C. Feb. 8, 2018), *report and recommendation adopted,* 2018 WL 1441271 (M.D.N.C. Mar. 22, 2018).

The undersigned **FINDS** that the ALJ's RFC analysis is not supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the

ALJ may reexamine or elaborate upon his analysis of Claimant's mental functional abilities and RFC finding.

### B. Consultative Examinations

Although the undersigned recommends that the Commissioner's decision be remanded for the foregoing reasons, the undersigned addresses Claimant's additional challenge that the ALJ erred in not assigning weight to the consultative examiner's opinions or articulate which findings the ALJ accepted and which he rejected. This argument is unavailing. Claimant's applications were filed in July 2017. Thus, the revised regulations, which concern applications filed on or after March 27, 2017, apply to Claimant's claims. Under the revised regulations, a medical opinion is now defined as the following:

> [A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

By contrast, "other medical evidence" includes "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* at §§ 404.1513(a)(3), 416.913(a)(3).

Furthermore, the regulations specify that a "prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review in your current claim based on their review of the evidence in your case record," such as "(i) The existence and severity of your impairment(s); (ii) The existence and severity of your symptoms; (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) Your residual functional capacity; (v) Whether your impairment(s) meets the duration requirement; and (vi) How failure to follow prescribed treatment and drug addiction and alcoholism relate to your claim." *Id*. at §§ 404.1513(a)(5), 416.913(a)(5).

Significantly, under the revised regulations, the ALJ is not required to assign weight to any evidence. *Id*. at §§ 404.1520c, 416.920c. Further, the ALJ is only required to evaluate the persuasiveness of medical opinions and prior administrative findings. *Id*. The consultative examiners, Mr. Sargent and Dr. Beard, did not provide any medical opinions or prior administrative findings. For instance, their consultative examination reports do not include opinions about what Claimant can still do despite his impairment or whether he has restrictions in certain functional abilities, nor do the reports contain administrative findings regarding the severity of Claimant's impairments and symptoms or whether the impairments meet a listing. Rather, Mr. Sargent and Dr. Beard provided clinical examination findings and diagnoses, which qualify as "other evidence" under the revised regulations. Therefore, the ALJ was not required to evaluate the persuasiveness of the consultative examination findings.

The ALJ explicitly considered Mr. Sargent and Dr. Beard's findings along with the other medical evidence of record. (Tr. at 82, 88). To the extent that Claimant's mental consultative examination findings bear on the ALJ's analysis of Claimant's mental functions, the ALJ should consider such evidence on remand. However, with respect to Claimant's argument that the ALJ erred in not assigning weight to or evaluating the persuasiveness of Mr. Sargent and Dr. Beard's "opinions," the undersigned **FINDS** that the ALJ discharged his duty under the revised regulatory framework. *See, e.g., Miller v. Saul*, No. 3:20-CV-00352, 2021 WL 1603613, at *17 (S.D.W. Va. Apr. 7, 2021), *report and recommendation adopted,* 2021 WL 1601749 (S.D.W. Va. Apr. 23, 2021) ("With respect to Ms. Wilson's consultative examination report, the ALJ did not explicitly determine whether any opinion therein was persuasive or not, however, as noted *supra*, he was not obligated to do so pursuant to the Regulations governing this decision. Nevertheless, the ALJ did expressly consider the findings in Ms. Wilson's report [...]").

## VIII.  **Recommendations for Disposition**

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 12), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 14); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is

hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** June 11, 2021

Cheryl A. Eifert
United States Magistrate Judge